UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
TYREE HARGROVES, LAVAR HARGROVES,
and KENNETH WRIGHT,

                Plaintiffs,

   - against -

THE CITY OF NEW YORK, NEW YORK CITY
POLICE DEPARTMENT, BARRY CULPEPPER,
and JOSEPH LIOTTA,

                Defendants.
-------------------------------------------------------------X
DAVID ALLEN,

                Plaintiff,

   - against -

THE CITY OF NEW YORK, NEW YORK CITY
POLICE DEPARTMENT, BARRY CULPEPPER,
JOSEPH LIOTTA, and JOHN WARNER,

                Defendants.
-------------------------------------------------------------X

**MEMORANDUM & ORDER**

03-CV-1668 (RRM) (VMS)
03-CV-3869 (RRM) (VMS)
03-CV-5323 (RRM) (VMS)

03-CV-4646 (RRM) (VMS)

ROSLYNN R. MAUSKOPF, United States District Judge.

      This is a consolidated action brought pursuant to 42 U.S.C. §§ 1983 and 1985, which alleged claims for illegal stop and detention, false arrest, malicious prosecution, violation of equal protection rights due to racial profiling, conspiracy to violate civil rights, and excessive force.[1] The Court presumes familiarity with the facts and procedural history of these cases, s*ee Hargroves v. City of New York*, 411 Fed. App'x 378; *Hargroves v. City of New York*, 694 F. Supp. 2d 198 (2010), as well as with the Report and Recommendation ("R&R") issued by Magistrate Judge Vera M. Scanlon. In brief, plaintiffs Brandon Hargroves and Kenneth Wright

---

[1] Plaintiffs also brought state law claims based on these allegations, which are addressed in a separate Memorandum and Order issued this day.

("the successful plaintiffs") accepted offers of judgment pursuant to Fed. R. Civ. P. 68 on July 23, 2010, and August 10, 2010, respectively. (*See* Doc. Nos. 159, 166.) On June 24, 2013, counsel for the successful plaintiffs filed a motion pursuant to 42 U.S.C. § 1988 seeking attorneys' fees and costs. (Doc. No. 197.) The Court referred the motion to Magistrate Judge Scanlon. (*See* Order dated Mar. 11, 2013.) On January 6, 2014, Magistrate Judge Scanlon issued an extensive, thorough, and well-reasoned R&R recommending that this Court grant in part and deny in part plaintiffs' motion, and that plaintiffs be awarded $300,347.54 in fees and costs. (*See* Doc. No. 209.) Magistrate Judge Scanlon reminded the parties that, pursuant to Fed. R. Civ. P. 72(b), any objections to the R&R were due by January 20, 2014. (*Id.* at 52.) On January 21, 2014, defendants filed their objections to the R&R, and on February 3, 2014, plaintiffs filed their response to those objections.

For the reasons that follow, the Court overrules defendants' objections and, having found no clear error in the remaining portions of the R&R, concurs with and adopts those portions of the R&R that recommend granting *nunc pro tunc* plaintiffs' motion for an extension of time to file, and awarding plaintiffs $300,347.54 in attorneys' fees and costs. *See Covey v. Simonton*, 481 F. Supp. 2d 224, 226 (E.D.N.Y. 2007).

**DISCUSSION**

Defendants object to the bulk of the R&R, asking that it be rejected to the extent that it recommended that the Court (1) find plaintiffs' motion for attorneys' was timely or, in the alternative, that any delay was due to excusable neglect; (2) utilize $450.00 and $400.00 as the reasonable hourly rates for plaintiffs' counsel; (3) decline to reduce plaintiffs' fee award by fifty percent to account for work attributable to claims brought by the unsuccessful plaintiffs; and (4) reduce the fee award requested by plaintiffs' counsel by 27.2 hours for Mr. Weiner and 22 hours

for Mr. Lumer.[2] (Doc. No. 210 at 5.) Plaintiffs' response is dedicated entirely to responding to defendants' objections. As to the R&R itself, plaintiffs urge that this Court adopt it in its entirety. (*See* Pls.' Mem. in Opp'n to Defs.' Objections (Doc. No. 211) at 1.) The Court reviews those portions of the R&R to which objections have been filed *de novo*. *See Mero v. Prieto*, 557 F. Supp. 2d 357, 361 (E.D.N.Y. 2008).

## I. Timeliness of Plaintiffs' Motion

Defendants first urge that plaintiffs' motion for attorneys' fees and costs is not timely and should therefore be dismissed in its entirety. (*See* Doc. No. 210 at 6–9.) In the R&R, Magistrate Judge Scanlon meticulously recounted and reviewed the procedural history of this case and plaintiffs' request for attorneys' fees, concluding that "[i]n light of the procedural wrangling and each side's steadfastness in its positions, it appears . . . that the delay is simply the product of the procedural complications of the case, namely the appeal, and the [p]arties' unsuccessful negotiations such that no precise allocation of responsibility is necessary." (Doc. No. 209 at 19.) Consequently, Magistrate Judge Scanlon recommended that the Court find plaintiffs' motion to be timely filed or, in the alternative, grant *nunc pro tunc* plaintiffs' request for an extension of time on the ground that any delay was the result of excusable neglect.[3] (*Id.*)

---

[2] Defendants do not object to the R&R insofar as it recommended that (1) certain hours be billed at $100 per hour because the work could have been performed by a paralegal or lower-level associate; (2) 14.1 hours, corresponding to plaintiffs' second depositions, be deducted from the fee award; and (3) costs in the amount of $3,527.83 be denied because plaintiffs failed to provide the explanation or receipts necessary to determine the reasonableness of those costs. (*See* Doc. No. 210 at 5.)

[3] Magistrate Judge Scanlon construed plaintiffs' briefing to constitute a "motion" within the meaning of Fed. R. Civ. P. 6, which provides that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). As defendants did not object to that portion of the R&R, (*see* Doc. No. 210 at 6–9), the Court likewise construes plaintiffs' arguments as a motion to that effect. *See In re City of New York*, No. 03-CV-6049 (ERK) (VVP), 2011 WL 7145228, at *9 n.9 (E.D.N.Y. Dec. 2, 2011) ("Although the movants did not file a formal motion requesting an extension of time, the court considers their reply to the respondents' arguments on this issue as constituting such motion.").

The Court agrees that plaintiffs' delay in filing their motion for attorneys' fees was both timely under Rule 54(b), and in the alternative, attributable to excusable neglect. First, as Magistrate Judge Scanlon correctly noted, plaintiffs timely filed an initial notice indicating their intent to seek fees and costs. When plaintiffs sought an extension to file the motion, defendants freely consented. Though the protracted procedural posture of this case delayed the actual filing of the motion, defendants waived any objection by consenting to the extension, and failing to otherwise object.

Moreover, any delay is attributable to excusable neglect, pursuant to the factors identified in *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993). These factors include: (1) the danger of prejudice to defendants; (2) the length of the delay and its potential impact on the judicial proceedings; (3) the reason for the delay, as well as whether it was within plaintiffs' reasonable control; and (4) whether plaintiffs acted in good faith. *Id.* at 395; *see also LoSacco v. City of Middletown*, 71 F.3d 88, 93 (2d Cir. 1995). This "determination is at bottom an equitable one, taking account of all relevant circumstances surrounding [a] party's omission." *Pioneer Inv. Servs. Co.*, 507 U.S. at 395.

After considering all of the parties' arguments and reviewing the R&R *de novo*, the Court reaches the same conclusion at that of Magistrate Judge Scanlon and concurs in her analysis of the *Pioneer* factors. There is little, if any, prejudice to defendants in this case because they had notice of plaintiffs' intent to move for attorneys' fees, consented to the prior extensions of time for plaintiffs' to file their motion, participated in the discussion of fees without raising to the Court any issue of tardiness, and were not hampered in any way by the delay. Additionally, the length of the delay – which, as Magistrate Judge Scanlon indicated, is less than defendants suggest – did not affect continued litigation of defendants' interlocutory appeal or the claims of

the unsuccessful plaintiffs, and had no detrimental impact on the overall judicial proceedings in this case. Moreover, it is readily apparent that any delay was due in substantial part to both parties' mutual interest in resolving the fee dispute without motion practice, their inability to come to an amicable resolution, and defendants' opposition to the entry of a briefing schedule on the motion. Finally, the Court is persuaded that plaintiffs acted in good faith. Although defendants urge that plaintiffs "were not acting in good faith during settlement discussions" because "they failed to turn over their time records" while "aware that [the] lack of time records was fatal to any settlement discussion," (Doc. No. 210 at 8–9), Magistrate Judge Scanlon correctly found both that plaintiffs were under no obligation to turn over the records as a precondition to negotiations and that defendants would have easily obtained the records when a motion schedule – which defendants opposed – was set. Indeed, though it might have been more productive had plaintiffs offered up their time records, defendants were just as obstinate in their refusal to begin any settlement negotiations without the records.[4] Accordingly, the Court finds that plaintiffs' delay was due to excusable neglect, and grants *nunc pro tunc* their request for an extension of time.

## II. Reasonableness of Fee

Defendants also object to the recommendations in the R&R regarding the hourly rates for counsel and the number of hours to be reimbursed. In order to ensure that federal rights are

---

[4] Merely because defendants required, as a component of their negotiating strategy, that plaintiffs disclose their time records does not transform plaintiffs' refusal to do so into a show of bad faith. In the context of whether to award attorneys' fees after a party rejects a settlement offer, the Second Circuit has held that "[a] district court should not rely on informal negotiations and hindsight to determine whether further litigation was warranted and, accordingly, whether attorney[s'] fees should be awarded." *Ortiz v. Regan*, 980 F.2d 138, 140 (2d Cir. 1992). *Ortiz* "prohibit[s] the use of informal negotiations as a basis for reducing fee awards in order to avoid . . . hindsight scrutiny of a litigant's tactical decisions that would 'improperly dissuade plaintiffs with meritorious claims . . . .'" *N.A.A.C.P. v. Town of E. Haven*, 259 F.3d 113, 120 (2d Cir. 2001) (quoting *Ortiz*, 980 F.2d at 140–41) (internal alterations omitted). Similar logic is applicable here; although a staunch position that precludes further negotiation could, in some cases, suggest bad faith, the Court cannot conclude that plaintiffs acted in bad faith simply because they refused to accede to defendants' demands.

5

adequately enforced, section 1988 "provides that a prevailing party in certain civil rights actions may recover a reasonable attorney's fee as part of the costs." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010) (internal quotation marks omitted). "The starting point for determining a reasonable attorney's fee in a federal civil rights action is the 'lodestar,' which is 'calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Hugee v. Kimso Apartments, LLC*, 852 F. Supp. 2d 281, 297 (E.D.N.Y. 2012) (quoting *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989)). The reasonable hourly rate is "the rate [that] a paying client would be willing to pay," *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008), and is determined in consonance with the factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1971).[5] The reasonable hourly rate is then used "to calculate what can properly be termed the 'presumptively reasonable fee.'" *Arbor Hill*, 522 F.3d at 190; *accord U.S. Bank, N.A. v. Byrd*, 854 F. Supp. 2d 278, 285–86 (E.D.N.Y. 2012).

### A. Counsel's Hourly Rates

Defendants oppose awarding plaintiffs fees at 2013 market rates, arguing instead that the Court should apply the rates that prevailed at the time plaintiffs accepted their Rule 68 offers. (Doc. No. 210 at 9–10.) "The rates to be used in calculating the [section] 1988 lodestar are the market rates 'prevailing in the community for similar services by lawyers of reasonably

---

[5] The *Johnson* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Manzo v. Sovereign Motor Cars, Ltd.*, No. 08-CV-1229 (JG) (SMG), 2010 WL 1930237, at *7 (E.D.N.Y. May 11, 2010), *aff'd*, 419 F. App'x 102 (2d Cir. 2011) (citing *Johnson*, 488 F.2d at 717–19).

comparable skill, experience, and reputation.'" *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (quoting *Blum*, 465 U.S. at 896 n.11); *Lynch v. Town of Southampton*, 492 F. Supp. 2d 197, 210–11 (E.D.N.Y. 2007). "The community is defined as the district in which the court sits." *Byrd*, 854 F. Supp. 2d at 286. Moreover, "in order to provide adequate compensation where the services were performed many years before the award is made, the rates used by the court to calculate the lodestar should be 'current rather than historic hourly rates.'" *Gierlinger*, 160 F.3d at 882 (quoting *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 284 (1989)).

Although defendants recognize that the hourly rates used should be current, they argue that plaintiffs "should not benefit from a three year delay . . . by receiving higher hourly rates than they would have received if they had moved for fees immediately . . . ." (Doc. No. 210 at 9–10.) While "[t]he court is not necessarily required . . . to award attorneys' fees based on current hourly rates when the delay is due in whole or in substantial part to the fault of the party seeking fees," *Gierlinger*, 160 F.3d at 882, "it would be harsh to deny counsel some allowance for the time value of attorney[s'] fees delayed by considerations of judicial administration" that sometimes require difficult choices between "sound priorities in addressing a busy calendar." *Sands v. Runyon*, 28 F.3d 1323, 1334 (2d Cir. 1994). Moreover, as indicated above, this case has a complicated procedural history and the blame for any delay does not lie solely with plaintiffs. The Court thus concludes, as did the magistrate judge, that current market rates are the appropriate benchmark.[6] Moreover, and equally important, Mr. Weiner and Mr. Lumer have, in fact, sought to be reimbursed at rates that are less than their current market rates. (*See* Doc. No.

---

[6] Defendants also suggest that awarding fees at the current market rate would leave no "incentive . . . to move for attorney's fees immediately and in a timely manner" because future plaintiffs presumably "can hold off and claim a higher hourly rate later on." (Doc. No. 210 at 10.) The Court notes, however, that a delay of that ilk would be quite different in kind from the delay in this case and could be addressed differently. Furthermore, there is at least one salient incentive for attorneys *not* to delay such a motion – actual receipt of the fee.

209 at 22, 23.) Thus, the type of reduction sought by defendants has been factored in to the calculus here.

Defendants further object to the rates at which Mr. Weiner and Mr. Lumer are to be compensated. (*See* Doc. No. 210 at 9–10.) "The specific rate that is reasonable for a given attorney depends on such factors as the attorney's experience and expertise, the novelty and complexity of the issues presented, and the overall success achieved in the case." *Brady v. Wal-Mart Stores, Inc.*, 455 F. Supp. 2d 157, 204 (E.D.N.Y. 2006) (quoting *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997)). "The [C]ourt may also rely on 'judicial notice of the rates awarded in prior cases and the [C]ourt's own familiarity with the rates prevailing in the district.'" *Hugee*, 852 F. Supp. 2d at 298 (quoting *Farbotko v. Clinton Cnty.*, 433 F.3d 204, 209 (2d Cir. 2005)). "Recent opinions from the Eastern District of New York have determined that reasonable hourly rates in this district 'are approximately $300–$450 per hour for partners, $200–$300 per hour for senior associates, and $100–$200 per hour for junior associates.'" *Hugee*, 852 F. Supp. 2d at 298–99 (quoting *Pilitz v. Inc. Village of Freeport*, No. 07-CV-4078 (ETB), 2011 WL 5825138, at *4 (E.D.N.Y. Nov. 17, 2011), and collecting cases); *see also Byrd*, 854 F. Supp. 2d at 286 (collecting cases).

After extensively reviewing other cases in this district, as well as the individual backgrounds of Mr. Weiner and Mr. Lumer, Magistrate Judge Scanlon recommended that they be compensated at $450.00 and $400.00 per hour, respectively. (*See* Doc. No. 209 at 22–24.) These rates are within the range of those approved by other courts in this district. *See, e.g.*, *Gray v. Toyota Motor Sales, U.S.A., Inc.*, No. 10-CV-3081 (JS) (ETB), 2013 WL 3766530, at *5 (E.D.N.Y. July 16, 2013) (employing an hourly rate of $450.00 for an attorney with fifteen years of experience); *Blount v. City of New York*, No. 11-CV-0124 (BMC), 2011 WL 8174137, at *1

8

(E.D.N.Y. Aug. 12, 2011) (approving an hourly rate of $425.00 for Mr. Lumer); *Libaire v. Kaplan*, No. 06-CV-1500 (DRH) (ETB), 2011 WL 7114006, at *4 (E.D.N.Y. June 17, 2011) (applying an hourly rate of $475.00 for an attorney with thirty years of experience and $450.00 for an attorney with eighteen years of experience), *rep. & recommendation adopted as modified*, 2012 WL 273080 (E.D.N.Y. Jan. 30, 2012); *Manzo v. Sovereign Motor Cars, Ltd.*, No. 08-CV-1229 (JG) (SMG), 2010 WL 1930237, at *7 (E.D.N.Y. May 11, 2010), *aff'd*, 419 F. App'x 102 (2d Cir. 2011) (adopting an hourly rate of $480.00 for an attorney with thirty years of experience). Having considered all of the *Johnson* factors and reviewed the prevailing rates awarded in prior cases, the recommendations in the R&R, and the parties' submissions, the Court overrules defendants' objections and adopts the rates recommended in the R&R.

**B. Defendants' Requested Fifty Percent Reduction**

Next, defendants urge that the Court reduce any fee award by fifty percent in recognition of the fact that only two of the four plaintiffs in this action prevailed. (*See* Doc. No. 210 at 10–12.) Moreover, defendants urge that "[p]laintiffs were certainly not successful enough to only warrant an approximately 7% reduction in their attorneys' fees and costs," (*id.* at 12), and maintain that "the facts and circumstances of this case are not so intertwined that it would be impossible for the Court to take a 50% pro rata reduction to account for the limited success of the two prevailing [p]laintiffs' claims." (*Id.* at 10.) The R&R declined to recommend a pro rata reduction, opting instead for a deduction of hours found to have been spent specifically on the unsuccessful plaintiffs' claims. The Court agrees.

"In determining the number of hours reasonably expended . . . [a] district court should exclude excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999).

9

However, consistent with the interrelated nature of the factual and legal issues in both this case and the underlying state cases, the claims, defenses, and strategies in this case were closely intertwined. For instance, as Magistrate Judge Scanlon noted, the "hours spent preparing the unsuccessful [p]laintiffs for their depositions . . . were [also] hours reasonably expended in furtherance of the prevailing [p]laintiffs' claims" because, "given that the case centered on [all plaintiffs'] unlawful arrest as part of a group together, they had discoverable information that was relevant to the successful [p]laintiffs' claims." (Doc. No. 209 at 30.) Nevertheless, the R&R appropriately identified and recommended that this Court exclude those hours attributable exclusively to the unsuccessful plaintiffs' claims. Since discovery and motion practice in this case focused on facts and legal issues relevant to all plaintiffs, the Court concludes that a gross percentage reduction is unnecessary.

Additionally, while "[b]oth 'the quantity and quality of relief obtained,' as compared to what the plaintiff[s] sought to achieve as evidenced in [their] complaint, are key factors in determining the degree of success achieved," *Barfield v. New York City Health & Hospitals Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (quoting *Carroll v. Blinken*, 105 F.3d 79, 81 (2d Cir. 1997)), a reduction of fees in connection with the successful plaintiffs' claims is not warranted. After extended motion practice, the efforts of Mr. Weiner and Mr. Lumer led to offers of judgment to plaintiffs Kenneth Wright and Brandon Hargoves for $450,001.00 and $50,001.00, respectively.[7] Those settlements are not insignificant. *See, e.g.*, *Lunday v. City of Albany*, 42 F.3d 131, 135 (2d Cir. 1994) (affirming an award of attorneys' fees and expenses totaling $118,912.08 even though the plaintiff "did not prevail on all of his claims against all the defendants" and was "awarded $35,000 in compensatory and punitive damages" against one

---

[7] With the exception of Brandon Hargoves, who received a lower offer of judgment because he was serving a concurrent sentence on an unrelated conviction, all plaintiffs received an offer of judgment in the amount of $450,001.00.

defendant that "fell short of the $7,130,000" the plaintiff had originally demanded); *Lyte v. Sara Lee Corp.*, 950 F.2d 101, 104 (2d Cir. 1991) (finding that "[a] $9,500 settlement is not 'de minimis' or merely 'technical'"). And as defendants concede, (Defs.' Mem. in Opp'n to Pls.' Mot. (Doc. No. 200) at 14), the Second Circuit has "repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation." *Barbour v. City of White Plains*, 700 F.3d 631, 635 (2d Cir. 2012) (quoting *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005)). As such, the Court overrules defendants' objections, concurs with the R&R, and declines to reduce plaintiffs' fee award by an additional percentage.

### C. Deduction for Unreasonable or Excessive Billing

Finally, defendants object to Magistrate Judge Scanlon's recommendation that the Court deduct 27.2 hours from Mr. Weiner's time and 22 hours from Mr. Lumer's time as insufficient to address what defendants see as unreasonable and excessive billing. (*See* Doc. No. 210 at 13–14.) Defendants cursorily "object to each category where the lower court declined to make deductions for excessive billing," but they are "most concerned with [Magistrate Judge Scanlon]'s refusal to make any deductions [with regard] to summary judgment motion practice." (*Id.* at 13.) In this case, plaintiffs' cross-motion for summary judgment was denied and their opposition to defendants' motion for summary judgment was similarly unsuccessful given the Second Circuit's decision on the interlocutory appeal. Nonetheless, "a court should not disallow fees for every motion that a prevailing party did not win."[8] *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527,

---

[8] Indeed, attorneys' fees may be awarded "for unsuccessful claims as well as successful ones . . . where they are 'inextricably intertwined and involve a common core of facts or are based on related legal theories." *Quaratino*, 166 F.3d at 425 (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1183 (2d Cir. 1996) (internal quotation marks omitted)).

11

538 (S.D.N.Y. 2008); *see also Garcia v. City of New York*, No. 11-CV-2284 (JBW) (JO), 2013 WL 5574507, at *6 (E.D.N.Y. Oct. 9, 2013).

Although "counsel should not be compensated for time spent pursuing claims or taking positions that were unreasonable, unsuccessful, or untimely," *Rozell*, 576 F. Supp. 2d at 538, it cannot be said that Mr. Weiner and Mr. Lumer expended their efforts on frivolous motion practice. *See id.* (citing *Reiter v. Metro. Transp. Auth. of New York*, No. 01-CV-2762, 2007 WL 2775144, at *10–12 (S.D.N.Y. Sept. 25, 2007)). The work counsel performed in connection with these motions ultimately led to the settlement conference that in turn led to the offers of judgment ultimately accepted by the successful plaintiffs. As such, the Court agrees with Magistrate Judge Scanlon that the time Mr. Weiner and Mr. Lumer dedicated to summary judgment motion practice in this case, while substantial, was not unreasonable or excessive.

The Court also concurs with Magistrate Judge Scanlon's conclusion that fees stemming from conferences between attorneys are not *per se* excessive. Although defendants cite *Dotson v. City of Syracuse*, No. 04-CV-1388 (NAM) (GJD), 2011 WL 817499, at *25 (N.D.N.Y. Mar. 2, 2011), *aff'd in part*, *dismissed in part*, 2013 WL 6183012 (2d Cir. Nov. 27, 2013), and *Fryar v. City of New York*, No. 10-CV-5879 (TLM) (MDG), Doc. No. 55 at 10 (E.D.N.Y. Aug. 22, 2012), for that proposition, both cases relied exclusively on the finding in *Rozell* that "[m]ore than 363 hours" spent on "conferences between plaintiffs' counsel" was excessive in the context of that litigation. 576 F. Supp. 2d at 541. Courts have generally found that "[a]n across-the-board reduction is . . . appropriate where the records demonstrate *excessive* communication with co-counsel." *De La Paz v. Rubin & Rothman, LLC*, No. 11-CV-9625 (ER), 2013 WL 6184425, at *4 (S.D.N.Y. Nov. 25, 2013) (emphasis added).[9] The Court agrees with the R&R that no

---

[9] *Compare Hop Hing Produces Inc. v. X & L Supermarket, Inc.*, No. 12-CV-1401 (ARR) (MDG), 2013 WL 1232919, at *7 (E.D.N.Y. Mar. 4, 2013), *rep. and recommendation adopted*, 2013 WL 1232483 (E.D.N.Y. Mar. 27,

excessive billing for conferences is at issue here. As such, the Court overrules defendants' objections, concurs with the R&R, and deducts 27.2 hours from Mr. Weiner's time and 22 hours from Mr. Lumer's time.

## CONCLUSION

For the foregoing reasons, the Court finds that defendants' objections to the R&R are without merit. Further, having reviewed the remaining portions of the R&R for clear error pursuant to 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72, and finding none, the Court concurs with and adopts the remaining portions of the R&R. *See Price v. City of New York*, 797 F. Supp. 2d 219, 223 (E.D.N.Y. 2011); *Covey*, 481 F. Supp. 2d at 226.

Accordingly, plaintiffs' request for an extension of time is granted *nunc pro tunc*, and the motion for attorneys' fees and costs brought by plaintiffs Brandon Hargroves and Kenneth Wright is granted, for a total award of $294,955.00 in attorneys' fees, and costs in the amount of $5,392.54. The motion is denied in all other respects. The Clerk of Court shall enter Judgment accordingly.

SO ORDERED.

Dated: Brooklyn, New York  
      March 26, 2014

*Roslynn R. Mauskopf*  
_____  
ROSLYNN R. MAUSKOPF  
United States District Judge

---

2013) (reducing fees for, *inter alia*, "excessive time spent on conferences between attorneys"); *Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 515 (S.D.N.Y. 2011) (reducing fees for, *inter alia*, "duplicative billing for conferences"); *Retained Realty, Inc. v. Spitzer*, 643 F. Supp. 2d 228, 241 (D. Conn. 2009) ("reducing the time "[w]here multiple attorneys . . . billed time for the same conference beyond what the court considers to be reasonable"); *with Wise v. Kelly*, 620 F. Supp. 2d 435, 453 (S.D.N.Y. 2008) (refusing to reduce fees because it "d[id] not view the hours [p]laintiffs' lawyers ha[d] spent together in internal conferences as excessive"); *Marathon Ashland Petroleum LLC v. Equili Co., L.P.*, No. 00-CV-2935 (JSM) (KNF), 2003 WL 21355216, at *2 (S.D.N.Y. June 10, 2003) (finding that "the number of hours devoted to document review and to conferences between and among [the] defendants' attorneys was essential to the competent preparation for and conduct of the depositions"); *Williams v. New York City Hous. Auth.*, 975 F. Supp. 317, 325 (S.D.N.Y. 1997) (quoting *Bowne of New York City, Inc. v. AmBase Corp.*, 161 F.R.D. 258, 267–68 (S.D.N.Y.1995), and noting that "[s]everal courts in this district have reimbursed attorneys for intra-firm meetings, and [that] 'courts generally grant attorney's fees for inter-firm conferences in class action lawsuits'").